**Diane GILES, Plaintiff–Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, INC., Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 16, 1993.

Permission to Appeal Denied by Supreme Court Dec. 28, 1993.

Conrad Finnell, Cleveland, for plaintiff-appellant.

Nora A. McCarthy and Lex A. Coleman, with Luther, Anderson, Cleary & Ruth, Chattanooga, for defendant-appellee.

*OPINION*

SANDERS, Presiding Judge (Eastern Section).

The Plaintiff has appealed from a decree denying recovery under an insurance policy for items stolen from her residence because of material misrepresentation in the application for the insurance.

In September, 1991, Defendant–Appellee Allstate Insurance Company (Allstate) had a homeowner's policy of insurance in effect on the residence of Plaintiff–Appellant Diane Giles. As pertinent here, the policy insured against loss as a result of theft from the home. On or about September 10, 1991, Plaintiff's house was burglarized, as a result of which Plaintiff filed a claim for coverage. Allstate denied coverage based on material misrepresentations made in the application for the insurance, which precipitated this litigation.

In her complaint, Plaintiff alleged Allstate had a policy in effect at the time of the burglary and Allstate wrongfully refused to pay her claim because of alleged misrepresentations in the application for insurance. She denied she had made any misrepresentations in the application for insurance. She sought compensation for the value of her loss plus a 25% bad-faith penalty for failure to pay her claim.

For answer, Allstate admitted it had a homeowner's policy in effect on Plaintiff's residence on the date of the alleged burglary. It said it denied Plaintiff's claim because of material misrepresentations made in the application for the policy. It alleged the misrepresentations were in violation of T.C.A. § 56–7–103 and in violation of the concealment or fraud provisions of its homeowner's policy and because of such misrepresentations the policy of insurance was void *ab initio*. It said it had refunded all premiums of insurance paid by Plaintiff.

The principal issue on the trial of the case centered around the fact that some six months prior to applying for the insurance with Allstate Ms. Giles had a fire in the house located on the same lot or tract of land as the house insured by Allstate. Ms. Giles's insurance carrier paid her in excess of $100,-000 as a result of that fire. Her insurance carrier notified her it would not renew her policy upon its expiration and this was her reason for applying for the policy with Allstate, but nothing pertaining to that fire loss or the refusal to renew the policy was revealed in the application signed by Ms. Giles for the Allstate policy.

Upon the trial of the case, there was a sharp dispute in the testimony of Ms. Giles and Mr. Michael Hayes, the Allstate agent who took the application for the insurance, as to what Ms. Giles told him or failed to tell him about the fire and refusal of Ms. Giles's insurance company to renew her policy.

Ms. Giles testified that after the fire and while her house was being rebuilt, her insurance company notified her it would not renew the policy when it expired in December. After receiving this notice, she contacted a number of insurance agents about writing coverage for her. She testified that when she called Mr. Hayes she told him in their initial conversation about her fire loss and her insurance carrier's notifying her it would not renew her policy when it expired. She also testified Mr. Hayes came to her house and took her application. He asked her the pertinent questions on the application and she gave correct answers. After answering the questions, she signed the application without reading it. Although she was given a carbon copy of the application at the time it was signed, she did not know the application contained incorrect answers until after her loss had occurred.

Mr. Hayes testified Ms. Giles did not tell him in their initial telephone conversation about her fire loss or that her insurance carrier had refused to renew her policy. He testified he filled out the application based on the information she gave him and, had she disclosed the correct information, the policy would not have been issued.

The court resolved this issue in favor of Ms. Giles but held it was not controlling in the case. The court found the case of *Hardin v. Combined Insurance Company of America*, 528 S.W.2d 31 (Tenn.App.1975) to be controlling. In his determination of the case, the court said: *"Harden against Combined Insurance Company of America* found at 528 S.W.2d at page 31, which is a case almost on all fours of what we have here. The only difference is that it involved a policy application for life insurance and this involved a policy application for homeowners coverage." "Ms. Giles signed an application that contained misrepresentations. And there is no question from the experience of this Court, more importantly from Mr. Brantley [underwriter for Allstate], that it was a material misrepresentation. There would have been no policy issued had the correct information been given."

The trial court found the issues in favor of the Defendant. The Plaintiff has appealed, saying the court was in error. We cannot agree, and affirm for the reasons herein stated.

After the application had been filled out by the agent, it was given to Ms. Giles. She testified she signed it but did not read it

before signing it. Immediately above her signature is the statement: "I have read this application before signing." It also states: "To the best of my knowledge the statements made by me on this application are true. I request the company, in reliance thereon, to issue the insurance applied for...."

Allstate relied upon the provisions of T.C.A. § 56-7-103 which provides that a misrepresentation which "increases the risk of loss" may defeat or void the policy. In the body of the policy issued by Allstate it is stated: "Concealment or Fraud—This policy is void if it was obtained by misrepresentation, from or concealment of material facts...." In the case of *Medley v. Cimmaron Insurance Co., Inc.*, 514 S.W.2d 426, 428 (Tenn.1974) our supreme court held a misstatement in an application for automobile liability insurance regarding a prior cancellation or refusal to write other insurance amounts to a material misrepresentation as a matter of law under the statute cited above and subjects the policy to being voided from its inception. *Id.* at 428.

The Appellant, in her brief, argues that since she correctly answered questions about her previous fire losses and the refusal of her insurance carrier to renew her policy, but the agent listed incorrect answers on the application, she should not be denied coverage even though she signed the application without reading it.

This same issue has been before the courts in this jurisdiction in numerous cases and they have consistently held: "[T]hat if, without being the victim of fraud [the insured] fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence." *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950) at 148. *Also see DeFord v. National Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S.W.2d 617, 621 (Tenn. 1945); *Hardin v. Combined Insurance Company*, 528 S.W.2d 31 (Tenn.App.1975); *Montgomery v. Reserve Life Ins.*, 585 S.W.2d 620 (Tenn.App.1979).

Ms. Giles cites *Industrial Life and Health Ins. Co. v. Trinkle*, 185 Tenn. 434, 206 S.W.2d 414 (1947) for the proposition that knowledge of the insurance agent is knowledge of the insurer. She argues Mr. Hayes's knowledge of her prior fire loss should be imputed to Allstate. *Trinkle*, however, is clearly distinguishable. In *Trinkle* two insurance agents solicited the Trinkles for life insurance on their newborn baby. The Trinkles told the agents the baby was born prematurely but was in good health, which was true. The application was signed by the Trinkles who had marked "yes" in answer to the question, "Are you [the baby] now in good health?" There were no questions on the application concerning the normalcy of the birth of the insured. When the same agents came to deliver the policy, Mrs. Trinkle informed them the baby was now sick and in the hospital. The agents nevertheless gave her the policy. The agents' knowledge of the baby's being sick and in the hospital, after the application was signed but before delivery of the policy, is the knowledge which was imputed the insurer. Unlike the case at bar, the Trinkles signed a truthful application—the baby was in good health at the time the application was signed.

We think the case at bar falls within the holding of *Beasley v. Metropolitan Life Ins. Co.*, 190 Tenn. 227, 229 S.W.2d 146 (1950). In *Beasley* the agent knew of, and the insured told the truth about, the ill health of the insured but the agent put false information on the application, which the insured signed without reading. The court held this barred recovery. In so holding, the court said:

"So, at the end of the Plaintiff's proof we have this situation: The answers to the application are admittedly false, but according to the Plaintiff's testimony, neither she nor her husband knew that those answers were false; but it cannot be doubted that if the Company had known that the answers were false, it would never have entered into the contract, nor issued the policy, so much is clear from the language of the documents which are the basis of the contract and which we quoted above in this opinion. Plaintiff says her husband signed the false application but did not

read it, though there was no fraud, duress, or disability to prevent his reading it, and the Plaintiff says she herself received the policy when it was delivered, but she did not read it and knew nothing about its falsity until the Company refused to pay the claim.

"[1] The following general rules of the law of contracts are amply supported by authorities cited in American Jurisprudence and Corpus Juris Secundum:

" 'To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.' 12 Am. Jur., 629. 'In this connection it has been said that one is under a duty to learn the contents of a written contract before he signs it, and that if, without being the victim of fraud, he fails to read the contract or otherwise to learn its contents, he signs the same at his peril, and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.' 17 C.J.S., Contracts, § 137, pages 489, 490.

" 'It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law.' *Upton v. Tribilcock*, 91 U.S. 45, 23 L.Ed. 203; *Berry v. Planters Bank*, 3 Tenn.Ch., 69; *Lockhart v. Moore*, 25 Tenn. App. 456, 466, 159 S.W.2d 438; *Federal Land Bank of Louisville v. Robertson*, 20 Tenn.App. 58, 63, 95 S.W.2d 317.

"[2] The foregoing authorities deal with the phase of the law of contracts where one who has negligently signed a contract without reading it, seeks to avoid his obligation, but clearly the converse would be even more unjust and unreasonable,—that the Courts should impose an obligation, on an innocent Defendant who was led to make the contract on the careless misrep-

resentation of the Plaintiff and the insured. A verdict should have been directed for the Defendant on account of the misrepresentation and consequent mistake."

*See also DeFord v. National Life & Accident Ins. Co.*, 182 Tenn. 255, 185 S.W.2d 617, 622 (1945); *Montgomery v. Reserve Life Ins.*, 585 S.W.2d 620, 622 (1979) ("An insured has the duty to read the application for insurance and to verify the information therein stated.") *Hardin v. Combined Insurance Company*, 528 S.W.2d 31 (Tenn.App.1975).

The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and the cost of this appeal is taxed to the Appellant. The case is remanded to the trial court for any further, necessary proceedings.

GODDARD, J., and WILLIAM H. INMAN, Special Judge, concur.