IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 14, 2005 Session

# GARY FLANARY, ET AL. v. CARL GREGORY DODGE OF JOHNSON CITY, LLC

**Appeal from the Chancery Court for Washington County**
**No. 34497      G. Richard Johnson, Chancellor**

---

**No. E2004-00620-COA-R3-CV  - FILED MAY 31, 2005**

---

Gary Flanary filed suit against Carl Gregory Dodge of Johnson City, LLC ("the dealership") and alleged that the dealership, without negotiation and without his consent or knowledge, had charged him an "administrative fee" in connection with his purchase of a vehicle. Flanary claimed that this practice violated, *inter alia*, the Tennessee Consumer Protection Act ("the TCPA"). He sought class action certification. The dealership filed a motion for summary judgment, relying upon the arbitration agreement ("the Agreement") signed by Flanary to support its position that Flanary was required to arbitrate his claims. The trial court stated that it personally did not believe an agreement to arbitrate under the circumstances of this case was fair; but, nevertheless, it opined that it felt compelled by the current state of the law to hold that arbitration was mandated by the terms of the Agreement. Flanary appeals the trial court's order requiring him to submit to arbitration. We affirm the judgment below to the extent the trial court, albeit reluctantly, held that the Agreement, on its face, is enforceable. However, based upon our determination that there is a genuine issue of material fact as to whether there was mutuality with respect to the obligation to arbitrate, we vacate so much of the trial court's judgment as holds that the parties entered into a contract to arbitrate. Accordingly, we remand for further proceedings on Flanary's complaint.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed in Part; Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. HERSCHEL P. FRANKS, P.J., filed a separate opinion concurring in part and dissenting in part.

Gordon Ball, Knoxville, Tennessee, for the appellant, Gary Flanary, on behalf of himself and all others similarly situated.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellee, Carl Gregory Dodge of Johnson City, LLC.

## OPINION

I.

On May 12, 2001, Flanary purchased a 2001 Dodge Dakota from the dealership. Flanary financed the purchase of the vehicle though the dealership, and, as a part of the financing arrangement, Flanary was charged an "administrative fee" of $349.

On December 14, 2001, Flanary filed the instant action against the dealership, alleging that the "administrative fee" included in his purchase price was deceptive and unfair, and, hence, that it constitutes a violation of the TCPA. Flanary seeks class action certification, alleging that the dealership had included the "administrative fee" on hundreds of transactions. One month later, the dealership filed a motion for summary judgment, in which it stated that Flanary had signed the Agreement as a part of the vehicle purchase, which Agreement, according to the dealership, required Flanary to submit the instant matter to arbitration. The Agreement signed by Flanary provides as follows:

**<u>ARBITRATION AGREEMENT</u>**

> Buyer/lessee acknowledges and agrees that the vehicle buyer/lessee is purchasing or leasing from dealer has traveled in interstate commerce. Buyer/lessee thus acknowledges that the vehicle and other aspects of the sale, lease or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce.
>
> Buyer/lessee and dealer agree that all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, the purchase of insurance, extended warranties, service contracts or other products purchased as an incident to the sale, lease or financing of the vehicle, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale, lease, or financing shall be settled by binding arbitration conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Section 1 et seq. and according to the Commercial Arbitration Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer/lessee and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale, lease, or financing, and its condition, including disputes concerning the terms and conditions of the sale, lease or financing, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale, lease or financing, any representations, promises or omissions made

-2-

in connection with negotiations for the sale, lease, or financing of the vehicle, or any terms, conditions, representations or omissions made in connection with the financing, credit life insurance, disability insurance, vehicle extended warranty or service contract or other products or services acquired as an incident to the sale, lease or financing of the vehicle.

Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessee and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where the dealer's facility is located. Buyer/lessee and dealer further agree that any question regarding whether a particular controversy is subject to arbitration shall be decided by the Arbitrator.

This Agreement is binding upon, and inures to the benefit of, buyer/lessee and dealer and the officers, employees, agents and affiliated entities of each of them. This Agreement will survive payment of buyer/lessee's obligations and any termination, cancellation or performance of the transactions between buyer/lessee and dealer.

**BUYER/LESSEE AND DEALER UNDERSTAND THAT THEY ARE AGREEING TO RESOLVE THE DISPUTES BETWEEN THEM DESCRIBED ABOVE BY BINDING ARBITRATION, RATHER THAN BY LITIGATION IN ANY COURT.**

(Capitalization, boldface type and underlining in original).

In February, 2002, Flanary filed an amended complaint, in which he clarified his claims under the TCPA and made additional allegations of intentional misrepresentation and fraud in the inducement of the contract, money had and received, and unjust enrichment, among other things. Nine months later, Flanary filed his motion in opposition to the dealership's motion for arbitration, arguing that the Agreement was invalid because, *inter alia*, it was not signed by any representative of the dealership, nor did it involve anything other than intrastate commerce.

On January 7, 2003, the trial court conducted a hearing on the dealership's motion for summary judgment.[1] Following a review of the parties' briefs and affidavits, as well as hearing the argument of the parties, the trial court ordered the parties to submit to arbitration. In doing so, however, the trial court expressed great reluctance, indicating that it personally believed the Agreement to be invalid for a number of reasons, but that it was constrained to follow the law.

Following the entry of the trial court's order, Flanary filed a motion for an interlocutory appeal, which the trial court granted. However, we declined to grant Flanary's Tenn. R. App. P. 9 application filed with this court. Flanary's appeal of our denial to the Supreme Court was likewise denied. On February 6, 2004, the trial court entered a final judgment ordering arbitration. From this judgment, Flanary appeals.

II.

In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993) (citations omitted). Summary judgment should be granted only "when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995) (citation omitted). In *Evco Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975), the Supreme Court observed as follows:

> Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. [It] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

Since a motion for summary judgment presents a pure question of law, our review is *de novo* with no presumption of correctness as to the trial court's judgment. *Gonzales v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn. Ct. App. 1993).

---

[1]The trial court treated the dealership's motion for summary judgment as a motion to compel arbitration. However, as the trial court made its determination in this case on the basis of the pleadings, affidavits, and exhibits submitted by the parties, and *not* on the basis of any oral testimony, it is clear that the trial court, in ordering the parties to submit to arbitration, was doing so under the rubric of summary judgment.

III.

A.

Flanary raises five issues for our consideration:

(1) Did Flanary's purchase of the vehicle involve interstate commerce, thereby giving rise to the Federal Arbitration Act ("the FAA")?

(2) Is the Agreement unconscionable, thereby rendering it invalid?

(3) Are Flanary's claims generally arbitrable claims?

(4) Does the Agreement constitute an unknowing waiver of Flanary's statutory and constitutional rights?

(5) Did the Agreement involve a lack of mutuality?

As set forth later in this opinion, we agree with Flanary's argument that the failure of the dealership to show its assent to the Agreement by signing it or otherwise accepting it renders the Agreement unenforceable as to Flanary. However, before reaching this issue, we will first address Flanary's other issues. We do so because of the emphasis placed upon them by the parties in their briefs and because of their obvious importance to Flanary's desire for class action certification.

B.

Flanary contends that his vehicle purchase did not involve interstate commerce, and that, consequently, it does not come under the FAA.

The FAA provides, in pertinent part, as follows:

A written provision in any maritime transaction or *a contract evidencing a transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or *an agreement in writing to submit to arbitration an existing controversy arising out of such a contract*, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (1999) (emphasis added). The Tennessee Supreme Court has pointed out that the United States Supreme Court has held that "involving commerce" is the functional equivalent of

"affecting commerce," which is the phrase ordinarily used by Congress to invoke its power to regulate interstate commerce. *See Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 82-83 (Tenn. 1999) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 274, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). Accordingly, "commerce," as that word is used in 9 U.S.C. § 2, refers to "interstate" commerce.

In the instant case, the trial court opined that Flanary's purchase had no effect on interstate commerce. On appeal, both parties present extensive argument as to how interstate commerce was or was not affected by Flanary's transaction with the dealership. In this case, we do not have to resolve the parties' "interstate commerce" dispute. This is because we have previously held that the FAA will govern *either* "(1) where the parties consented in the agreement that the FAA would apply, *or* (2) where the court determines that the contract 'involv[es] [interstate] commerce.'" *Guffy v. Toll Bros. Real Estate, Inc.*, No. M2003-01810-COA-R3-CV, 2004 WL 2412627, at *3 (Tenn. Ct. App. E.S., filed October 27, 2004) (no Tenn. R. App. P. 11 application filed) (emphasis added). Because the Agreement entered into between Flanary and the dealership provided, in no uncertain terms, that the FAA would govern "all claims, demands, disputes or controversies of every kind or nature" arising out of every aspect of the purchase of the vehicle, the parties consented to the application of the FAA. Therefore, there is no need for us to decide whether Flanary's purchase of the vehicle did or did not involve interstate commerce.

C.

Next, Flanary argues that the Agreement is unconscionable, thereby rendering it invalid. Specifically, Flanary contends that the Agreement is an unenforceable adhesion contract; that there is nothing to indicate that Flanary ever read the Agreement or had it explained to him; and that the costs of arbitration are prohibitive.

In addressing this issue, as well as Flanary's next two issues, we find controlling precedent in the case of *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351 (Tenn. 2001), *perm. app. denied and publ'n recommended*, November 19, 2001, a case that is clearly applicable to the bulk of the issues raised by Flanary. In an attempt to prevail on this appeal, Flanary urges us to revisit and overrule our decision in *Pyburn*. However, guided by the doctrine of *stare decisis*, and particularly mindful of the Supreme Court's view of *Pyburn* as reflected by that court's "recommendation" that our opinion in that case be published, *see* Tenn. Sup. Ct. R. 4(D)[2], we decline Flanary's invitation and reaffirm our holding in *Pyburn*.

---

[2]Tenn. Sup. Ct. R. 4(D) provides as follows:

> If an application for permission to appeal is filed and denied with the recommendation that the intermediate appellate court opinion be published, the author of the intermediate appellate court opinion shall ensure that the opinion is published in the official reporter.

In *Pyburn*, the plaintiff filed a suit against the defendant dealership seeking class action certification, alleging that the defendant was charging a "secretly inflated" interest rate to its customers who obtained financing through the dealership, and that the defendant was later receiving a kickback on the interest rate from the financing company. *Pyburn*, 63 S.W.3d at 353. The plaintiff alleged violations of the TCPA, and made additional claims of unjust enrichment, money had and received, and intentional misrepresentation, among others. *Id.* at 354. The defendant filed a motion to compel arbitration, relying upon the arbitration agreement signed by the plaintiff at the time he purchased his vehicle. *Id.* at 355. The arbitration agreement involved in *Pyburn* is virtually identical to the Agreement in the instant case. *Id.* at 354-55.

The trial court in *Pyburn* denied the defendant's motion to compel arbitration. *Id*. at 355. It found that the arbitration agreement was unenforceable. *Id*. at 356. This court reversed the trial court. *Id.* at 354. One of the plaintiff's many issues on appeal addressed whether the arbitration agreement was an unenforceable adhesion contract. *Id.* at 358. Our Supreme Court has defined an adhesion contract as follows:

> [A] standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.

*Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) (quoting Black's Law Dictionary 40 (6th ed. 1990)). The *Pyburn* court, relying on the *Buraczynski* definition, noted that the arbitration agreement signed by the plaintiff was a "separate, one page document"and that the words "ARBITRATION AGREEMENT" appeared at the top of the document in capital letters, bold type, and large font. *Pyburn*, 63 S.W.3d at 359. With respect to whether the plaintiff read the arbitration agreement before signing it, the court stated that the record was unclear. *Id.* However, regardless of whether the plaintiff read the agreement or not, we held in *Pyburn* that such an inquiry was immaterial:

> If [the plaintiff] did read it, there is no proof in the record that he made any objections to its contents or that he actually was told he must sign the Agreement before he could purchase the van. If he did not read it, then he cannot he heard to complain about its contents. If, without being the victim of fraud, a party
>
> > fails to read the contract or otherwise to learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.

> *Giles v. Allstate Insurance Co.*, 871 S.W.2d 154, 156 (Tenn. Ct.
> App. 1993).  In *Giles*, this Court noted that to allow a party to admit
> he signed a contract, but deny it expresses the agreement he made, or
> to allow him to admit he signed it but did not read it or know its
> stipulations "would absolutely destroy the value of all contracts."
> *Giles*, 871 S.W.2d at 157 (citations omitted).

*Id.* (additional internal citations omitted).

As to the plaintiff's argument in *Pyburn* that the arbitration agreement was presented to him on a "take it or leave it" basis, this court had determined that there was nothing to indicate that the plaintiff had ever questioned the defendant about the agreement's contents or expressed that he did not understand the meaning of the agreement.  *Id.*  In addition, we pointed out that the plaintiff was free to purchase a van elsewhere if he chose not to agree to the terms of the arbitration agreement. *Id.* at 359-360.

The *Pyburn* court, citing *Buraczynski*, stated that adhesion contracts "which are oppressive to the weaker party or which serve to limit the obligations and liability of the stronger party will not be enforced."  *Pyburn*, 63 S.W.3d at 360.  We then held that the arbitration agreement signed by the plaintiff did not "limit the liability or obligations of [the defendant]," but rather, it clearly set out the sorts of claims that the parties agreed would be subject to arbitration; it bound both parties to arbitration; and it contained no buried terms.  *Id.*  We concluded that the arbitration agreement was not an unenforceable adhesion contract.  *Id.*

The facts in the instant case bearing upon this issue are essentially identical to those in *Pyburn*.  The Agreement signed by Flanary was a separate, one page document, with the words "ARBITRATION AGREEMENT" in bold and in all capital letters across the top of the page.  As the plaintiff signed the agreement, he cannot now be heard to complain that he did not read it, did not understand it, or did not have it explained to him, because, in the absence of fraud, a party will not be permitted to disavow a contract signed by him based upon any of these asserted grounds. While the former general manager of the dealership stated in his deposition that the dealership would not have sold the vehicle to Flanary had he refused to sign the Agreement, that does not change the fact that Flanary was free to purchase a vehicle elsewhere.  Finally, the terms of the arbitration agreement bound both Flanary and the dealership to arbitration and contained no buried or hidden terms.  Just as in *Pyburn*, there is nothing to indicate that the Agreement constituted an unenforceable adhesion contract.

As to the alleged prohibitive costs of arbitration, the *Pyburn* court addressed this issue as well:

> In the [arbitration agreement], the parties agreed to utilize the
> Commercial Rules of the American Arbitration Association
> ("AAA").  As noted by Plaintiff in his brief filed in this appeal, the

Trial Court properly took judicial notice of the Commercial Rules of the AAA. We likewise take judicial notice of those Commercial Rules of the AAA as referenced by the Trial Court in its Memorandum Opinion. *See* Tenn. R. App. P. 13(c).

While an initial filing fee may have to be advanced by a plaintiff in a claim involving a small consumer transaction, Rule R-45 of the Commercial Rules allows the arbitrator to assess fees, expenses, and compensation of the arbitrator in a manner deemed appropriate by the arbitrator. A successful plaintiff, therefore, could have all of the "potentially prohibitive" costs shifted to the defendant. Rule R-45 also permits the arbitrator to award attorney's fees to a successful plaintiff who arbitrates a TCPA claim because an award of attorney's fees is authorized by law. *See* T.C.A. § 47-18-109(e)(1). The arbitrator can also assess costs as he or she sees fit for expenses of the arbitration, including the arbitrator and witnesses. Rule R-52. For all practical purposes, an award of costs, expenses, and attorneys fees are on the same footing in this case regardless of whether the parties arbitrate the claim or proceed in a court of law. Even if the Commercial Rules of the AAA specifically did not allow a successful plaintiff to recover costs, etc., these items could nevertheless be recovered by Plaintiff in arbitration because they are part of his statutory claim pursuant to the TCPA. *See* T.C.A. § 47-18-109(e)(1) (authorizing an award of costs and attorney's fees to a successful plaintiff).

In *Green Tree Financial Corp.- Alabama v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the United States Supreme Court decided whether an agreement to arbitrate is unenforceable because it says nothing about the costs of arbitration. While the Court recognized that the existence of large arbitration costs could preclude a litigant from vindicating a statutory right in a arbitral forum, the plaintiff in *Randolph* had not met her burden of proving that she would have to bear such costs if she went to arbitration. *Randolph*, 121 S.Ct. at 522. When "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* In the present case, Plaintiff has failed to meet this burden. While the initial filing fee for arbitration may indeed be higher to Plaintiff, this in and of itself is not sufficient to make utilization of the agreed upon forum impracticable in light of the fact that this cost can be fully recouped if Plaintiff is successful. Our conclusion might be different had the Agreement

prohibited shifting of these costs or contained some language requiring Plaintiff to be responsible for all or a disproportionate share of the costs of arbitration, but that is not the situation here. There is no proof that the cost of arbitration in this case would be any greater than the cost of litigation in a court, notwithstanding the fact that Plaintiff's claims may be relatively small.

*Id.* at 362-63 (internal footnote omitted).

Like the plaintiff in *Pyburn*, Flanary has failed to show that he is likely to incur significant costs. Accordingly, we decline to hold the Agreement unconscionable on the basis of prohibitive costs.

D.

Flanary next asserts that his claims against the dealership are not generally arbitrable claims. These claims – violation of the TCPA, engaging in the unauthorized business of law, "uniform"[3] intentional misrepresentation, fraud in the inducement of contract, and common law claims for money had and received, and unjust enrichment – are, according to Flanary, "either not based in contract or are unrelated to the contract," and that, as such, "they are not subject to arbitration." Flanary premises his entire argument on our unpublished opinion in the case of *Brown v. KareMor Int'l, Inc.*, No. 01A01-9807-CH-00368, 1999 WL 221799 (Tenn. Ct. App. M.S., filed April 19, 1999).[4]

The plaintiff in *Pyburn* similarly attempted to rely upon *KareMor* to support his theory that TCPA claims are not amenable to arbitration. In holding otherwise, we stated the following:

> In *KareMor*, this Court concluded that the plaintiff's TCPA claim was not subject to arbitration because it was not within the scope of the arbitration agreement. In other words, the parties had not agreed to arbitrate that claim. We did not hold that TCPA claims cannot be arbitrated. The agreement to arbitrate in this case is much broader than the one in *KareMor*, and the claims asserted by Plaintiff herein are unquestionably contained within the scope of what the parties agreed to arbitrate. Plaintiff agreed to arbitrate, among other things, "all claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, lease or financing of the vehicle,

---

[3]We are not sure of what the plaintiff means by the modifier "uniform."

[4]We are advised by the Appellate Court Clerk's office that permission to appeal was granted in this case by the Supreme Court on January 18, 2000, but that the appeal was subsequently dismissed by the High Court without opinion on June 30, 2000.

terms and provisions of the sale, lease or financing agreement, arrangements for financing . . . ." The claims asserted by Plaintiff all center around the financing agreement and its terms and, therefore, he agreed to arbitrate the claims which are asserted in the Complaint.

To the extent the TCPA prohibits arbitration because it is an unlawful waiver of Plaintiff's right to proceed in a judicial forum, the TCPA is preempted by the FAA.

*Pyburn*, 63 S.W.3d at 362.

In the instant case, the pertinent language from the Agreement is virtually identical to that of the arbitration agreement in *Pyburn*: the parties agreed to arbitrate "all claims, demands, disputes or controversies of every kind or nature between them arising from, concerning or relating to any of the negotiations involved in the sale, lease or financing of the vehicle, the terms and provisions of the sale, lease, or financing agreements, the arrangements for financing, . . . ." Just as in *Pyburn*, Flanary's claims against the dealership all revolve around the financing of the vehicle. Moreover, in addition to Flanary's TCPA claim, his claims of unjust enrichment, money had and received, and intentional misrepresentation were all claims raised by the plaintiff in *Pyburn*. As in *Pyburn*, Flanary agreed to arbitrate all of his claims under the terms of the Agreement. Accordingly, we hold that Flanary's argument that the claims he asserted are not generally arbitrable is without merit.

E.

Next, Flanary contends that the Agreement constitutes an unknowing waiver of his statutory and constitutional rights. This self-proclaimed public policy argument centers around two beliefs: (1) "that a statutory claim, because of the third party and public interests involved, is not suitable for arbitration and should be decided by a court, not an arbitrator," and (2) "that the arbitration process is not capable of resolving these disputes in accordance with the law or protecting the interests of the consumer."

With respect to the argument that a statutory claim is not suitable for arbitration, we have previously quoted at length from *Pyburn* as to why a statutory claim under the TCPA is suitable for arbitration. Furthermore, as to the claim that arbitration cannot adequately resolve disputes such as Flanary's in accordance with the law or in accordance with the consumer's rights, we know of no reason why such claims cannot be fairly arbitrated.

F.

Finally, Flanary argues that the Agreement is invalid due to a lack of mutuality. Flanary asserts that a lack of mutuality is exhibited by the dealership's failure to have a representative sign the Agreement. Because the Agreement was signed only by Flanary, he argues that the dealership would be free to deny that it had ever executed the Agreement. This lack of mutuality, so the argument goes, invalidates the entire Agreement.

-11-

It is well-settled that a contract, in order to be enforceable, must, among other things, "result from a meeting of the minds and must be sufficiently definite to be enforced." *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990) (citations omitted). In the typical case, assent to a contract is shown by the signature of the parties. However, there are exceptions to this concept. "When a contract between two parties which is contemplated to be signed by both is reduced to writing and signed by only one of them, but accepted by the other, it becomes in contemplation of the law, a written binding contract on both." *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 350 (Tenn. Ct. App. 1999) (citations omitted); *see also* *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, — S.W.3d —, 2005 WL 646719, at *3 (Tenn., filed March 22, 2005) ("When a party who has not signed a contract demonstrates its assent by performing pursuant to the contract and making payments conforming to the contract's terms, that party is estopped from denying the binding effect of the contract.").

In attacking Flanary's lack of mutuality argument, the dealership relies upon the affidavit of its general manager:

> The Arbitration Agreement in this case was prepared by [the dealership], or at its request, and was presented to [Flanary] as a material portion of the sale. The dealership intended to be bound to the [A]greement and believes that it is currently bound by the [A]greement and that it must arbitrate any covered dispute.

(Paragraph numbering in original omitted).

Unlike *Buddy Lee*, we find no evidence in the record that, prior to the filing of the instant suit, there was any *conduct* evidencing the dealership's assent to the terms of the Agreement. The affidavit of the dealership's general manager is nothing more than a post-commencement of litigation statement that the dealership considers itself bound by the Agreement. This does not amount to *evidence* of the concept of acceptance as addressed in *Buddy Lee* and the recent Supreme Court decision in *Staubach*. Accordingly, in this summary judgment analysis, we are left with an agreement to arbitrate signed by one party but not by the other. Therefore, on the face of the record now before us, we conclude that there is a genuine issue of material fact as to whether there was mutuality with respect to the obligation to arbitrate in the Agreement. We conclude that the dealership, therefore, is not entitled to summary judgment with respect to its position that Flanary must arbitrate his claims pursuant to the Agreement's terms.[5]

## IV.

The judgment of the chancery court is affirmed in part and vacated in part. This matter is remanded to the trial court for further proceedings consistent with this opinion. Exercising our discretion, we tax the costs on appeal to the appellee, Carl Gregory Dodge of Johnson City, LLC.

---

[5] For the benefit of the reader, we had attached a copy of the Agreement as an appendix to this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE