IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 3, 2010 Session

# RANDALL D. KISER v. IAN J. WOLFE & CONSUMERS INSURANCE COMPANY

**Appeal from the Circuit Court for Bradley County**
**No. V-05-869      Lawrence Puckett, Judge**

**No. E2009-01529-COA-R9-CV - FILED MAY 28, 2010**

This interlocutory appeal considers an issue of uninsured motorist coverage following an automobile accident in which Plaintiff Randall D. Kiser was permanently injured. The plaintiff was working within the scope of his employment, driving for a towing company, when his truck was struck by Defendant Ian J. Wolfe's vehicle. The defendant driver tendered his liability policy limits to the plaintiff and is not a party to this appeal. The employer towing company was insured by Defendant Consumers Insurance Company. In anticipation of arbitration for determination of damages and liability, the insurance company moved for partial summary judgment. The trial court denied summary judgment but granted the insurance company permission for an interlocutory appeal to determine two issues, on which we hold: (1) On a policy of vehicle insurance, the statutory requirement of Tenn. Code Ann. § 56-7-1201(a)(2) for a written rejection of uninsured/underinsured motorist benefits or written selection of uninsured/underinsured motorist benefits lower than liability limits is met when the insured signs an application containing a lower selection but neglects to initial a block provided for that purpose; and (2) the insurer bears the burden of proof to show that the insured signed an insurance contract application containing a stated limit of uninsured/underinsured motorist coverage, but once that burden has been met, the insured must raise any issue that the insurer obtained the insured's signature unlawfully under Tenn. Code Ann. § 56-7-1201(a)(2). We vacate the trial court's denial of the insurance company's Motion for Partial Summary Judgment and remand for reconsideration in light of this holding.

**Tenn. R. App. P. 9 Appeal; Judgment of the Circuit Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

N. Mark Kinsman and J. Chad Hogue, Chattanooga, Tennessee, for the appellant, Consumers Insurance Company.

Christopher D. Markel, Chattanooga, Tennessee, for the appellee, Randall D. Kiser.

**OPINION**

**I. BACKGROUND**

We accepted this interlocutory appeal to consider the issue of whether the provision of Tenn. Code Ann. § 56-7-1201(a)(2) requiring written rejection or selection of uninsured motorist coverage is met when the insured signs a policy application but does not initial a block provided specifically to reflect the insured's choice. This action arose as a negligence suit following an automobile accident that occurred in Bradley County on May 5, 2005. Defendant Ian J. Wolfe's vehicle crossed the center line of Frontage Road and struck a tow truck driven by Plaintiff/Appellee Randall D. Kiser. At the time of the accident, Mr. Kiser was working within the scope of his employment for Lawson Towing Company ("Lawson Towing"), which was covered under an automobile insurance policy issued by Defendant/Appellant Consumers Insurance Company ("Consumers"). After Mr. Wolfe tendered his liability policy limits to Mr. Kiser, Consumers was joined to the negligence action under Tennessee's uninsured motorist coverage statute, Tenn. Code Ann. § 56-7-1201, et seq.

It is undisputed that Consumers issued an insurance policy to Lawson Towing in response to an application completed by owner Ken Lawson, dated September 10, 2002, and titled "Towing - Commercial Application" ("the Application"). The policy had been repeatedly renewed and was in effect at the time of the accident. It is also undisputed that as an employee/driver, Mr. Kiser was covered by the policy.

The front page of the Application contains a table with each type of available coverage listed in the first column, the corresponding limit of each type of coverage in the second column, and the policy fee for that coverage in the third column. The table clearly lists the "Liability" coverage limit as $1,000,000 and the "Uninsured Motorist" coverage limit as $60,000.

The dispute giving rise to this appeal centers on the third page of the Application. Immediately before the signature line at the end of the document, there are three text blocks that go across the page. In the first, there is a warning against fraudulent representation on an insurance form. In the second, there is the following statement in all capital letters:

I UNDERSTAND AND ACKNOWLEDGE THAT UNINSURED MOTORISTS (UM) BODILY INJURY AND PROPERTY DAMAGE COVERAGES HAVE BEEN EXPLAINED TO ME. I HAVE BEEN OFFERED THE OPTIONS OF SELECTING UM LIMITS EQUAL TO MY LIABILITY LIMITS, UM LIMITS LOWER THAN MY LIABILITY LIMITS, OR TO REJECT UM BODILY INJURY AND/OR UM PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY.

The third text block lists the following three choices, again in all capital letters and reproduced here to read in single lines across the page as on the original:

1. I SELECT UNINSURED MOTORISTS BODILY INJURY LIMIT(S) INDICATED IN THIS APPLICATION. ___ (INITIALS)
2. I SELECT UNINSURED MOTORISTS BODILY INJURY AND PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY.___ (INITIALS)
3. I SELECT ONLY UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY. ___ (INITIALS)

All three of these choices regarding uninsured motorist coverage are blank on the Application.

The "Applicant's Signature" line below these choices was signed by Ken Lawson, owner of Lawson Towing. The "Producer's Signature" line was signed by Jeff Holden, an agent with Consumers and son of the company's president, Elaine Holden. Mr. Holden gave the following testimony by deposition regarding the signatures:

Counsel: Does your signature appear on that last page [of the Application]?

Mr. Holden: It does.

Counsel: Which one, the right or the left?

Mr. Holden: The right.

Counsel: Okay. And the other signature, whose signature is that?

Mr. Holden: It's [sic] appears to be Ken Lawson.

Counsel: Did you see him sign that?

Mr. Holden: Yes. I assume I signed here and he signed there.

Counsel:     Is that the purpose of your signature is to verify he's signed it?

Mr. Holden:   Yes, you could say that.


Dorris Waldron, Claims Supervisor with Consumers, stated in an affidavit that between the insurance policy's issuance on September 10, 2002, to the date of Mr. Kiser's accident on May 5, 2005, "Ken Lawson received thirty (30) separate mailings from Consumers Insurance Company that showed uninsured motorist policy limits of $60,000." Mr. Kiser does not dispute this fact. Several mailings from Consumers to Lawson Towing, all reflecting uninsured motorist limits of $60,000, are included in the record as exhibits. Of particular note is the "Towing Renewal Declaration," dated September 13, 2004. This policy renewal was in effect at the time of the accident, and the uninsured motorist coverage listed on the renewal is $60,000.

Mr. Kiser sought an award of the full liability amount of $1,000,000 from Consumers, as well as compensatory damages from Mr. Wolfe. Consumers moved for partial summary judgment on the basis that Mr. Kiser was bound by the election of the lower uninsured motorist limit. Following a hearing, the trial court denied Consumers' motion, stating the following three reasons:

1.    [T]he page with a signature [on the Application] notes an "effective date" of the policy of insurance of September 10, 2002, and contains a section for an insured-applicant to acknowledge that "uninsured bodily injury and property damage coverage have been explained to me. I have been offered the options of selecting UM limits equal to my liability units, UM limits lower than my liability limits, or to reject UM bodily injury and/or UM property damages entirely." Below this section, on the same page, appear several blanks, for the insured to initial acknowledgment of the aforementioned, and his selection of UM limits contained in the application, his rejection of all UM coverage, and/or rejection only of UM property damage coverage. It is undisputed that each blank in this section on the signature page was not initialed by the insured.

2.    The record contains no testimony from Mr. Lawson as to his intent in these matters. Further, both parties have declined the option of obtaining testimony from Mr. Lawson as to his intent in these matters, and have agreed to proceed based upon the Court's interpretation of the application and facts in the record.

-4-

3.      Based upon the undisputed facts, the Court finds that the application fails to satisfy *Tennessee Code Annotated § 56-7-1201(a)(2).*

Consumers then moved for permission to file an interlocutory appeal. In granting permission, the trial court stated:

> The Court declares that resolution of this coverage issue by the Court of Appeals will prevent needless, expensive, and protracted litigation, given that Plaintiff, will need to secure extensive medical proof and/or expert testimony for the binding arbitration under *Tennessee Code Annotated § 56-7-1206.* Since this coverage issue appears to be the primary dispute between the Plaintiff and Consumers Insurance Company, the Court finds that an interlocutory appeal will result in a net reductions [sic] in the duration and expense of the litigation.

We subsequently allowed the application by Consumers for interlocutory appeal.

## II. ISSUES

In its Order Granting Permission to File Interlocutory Appeal, the trial court stated that this case presented "two significant and novel legal questions for which there is no binding authority . . . ." As stated by the trial court, the two questions are:

A.      [W]hether, on a policy of vehicle insurance, the statutory requirements of Tenn. Code Ann. § 56-7-1201(a)(2), which require rejection in writing of uninsured/underinsured motorist coverage limits that match policy liability coverage limits, have been met, based upon the undisputed facts noted in the record of this case, and without further proof of intent to reject matching uninsured motorist coverage.

B.      The second question at issue is which party has the burden of going forward in light of the undisputed facts in this case.

## III. STANDARD OF REVIEW

This appeal requires us to determine whether Mr. Lawson's signature, as the representative for Lawson Towing, on an insurance contract application fulfilled the statutory requirement that selection of uninsured motorist coverage lower than liability coverage be

in writing. The proper interpretation of Tenn. Code Ann. § 56-7-1201(a)(2) presents issues of law, which we review de novo with no presumption of correctness. *See Carter v. Quality Outdoor Prods., Inc.*, 303 S.W.3d 265, 267 (Tenn. 2010) (citing *Perrin v. Gaylord Entm't Co.*, 120 S.W.3d 823, 826 (Tenn. 2003)).

## IV. DISCUSSION

### A. Written Rejection or Selection Requirement of Uninsured Motorist Coverage Tenn. Code Ann. § 56-7-1201(a)(2)

Legislation requiring insurance companies to provide uninsured motorist coverage has been in effect in Tennessee since 1967. *Dunn v. Hackett*, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992) (citing 1967 Tenn. Pub. Acts, ch. 371). Under the current statute, ["t]he limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy." Tenn. Code Ann. § 56-7-1201(a)(1); *Dunn*, 833 S.W.2d at 81 ("The language of T.C.A. § 56-7-1201 is clear and unequivocal that every automobile liability policy issued for delivery in this state shall include uninsured motorist coverage with limits equal to the bodily injury liability limits, unless the coverage is rejected by the named insured.").

The 1967 statute included a provision allowing the insured to reject uninsured motorist coverage, but the provision did not specify how the rejection must be accomplished. *Dunn*, 833 S.W.2d at 81 (citing Tenn. Code Ann. § 56-1148 (amended 1982)). The legislature has amended the full statute several times, but the language regarding rejection was amended only once in 1982. Tenn. Code Ann. § 56-7-1201; *Dunn*, 833 S.W.2d at 81. The current provision reads:

> (a)(2) However, any named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage but not less than the minimum coverage limits in § 55-12-107. Any document signed by the named insured or legal representative that initially rejects the coverage or selects lower limits shall be binding upon every insured to whom the policy applies, and shall be conclusively presumed to become a part of the policy or contract when issued or delivered, regardless of whether physically attached to the policy or contract. Unless the named insured subsequently requests the coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of the policy, or the transfer of vehicles insured under the policy, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer; provided, that whenever a new

application is submitted in connection with any renewal, reinstatement or replacement transaction, this section shall apply in the same manner as when a new policy is being issued.

Tenn. Code Ann. § 56-7-1201(a)(2). This language, in force since 1982, requires that rejection of uninsured motorist coverage be in writing and allows for selection of coverage lower than the bodily injury liability limit in the policy. *Id.* A selection for lower limits must be for at least the amount required for bodily injury liability by Tenn. Code Ann. § 55-12-107, which references section 55-12-102(12)(D)(i)(a), which requires minimum liability coverage of $60,000 per accident. *Id.* Thus, if an insured selects a lower amount of uninsured motorist coverage, rather than rejecting it outright, that coverage still must be at least $60,000.

In the case at bar, it is undisputed that Mr. Kiser, as a covered employee of Lawson Towing, is bound by the terms agreed to by Mr. Lawson when he entered the contract with Consumers Insurance. *See* Tenn. Code Ann. § 56-7-1201(a)(2) ("Any document signed by the named insured or legal representative that initially rejects the coverage or selects lower limits shall be binding upon every insured to whom the policy applies . . . ."). The liability coverage limit in Lawson Towing's policy is $1,000,000. The uninsured motorist coverage limit amount listed on the first page of the policy is $60,000. This amount matches the minimum amount that the insured can select without completely rejecting uninsured/underinsured motorist coverage under Tenn. Code Ann. § 56-7-1201(a)(2). The issue, and necessary interpretation of the statute, then centers on whether Mr. Lawson's signature on the last page of the Application constitutes a "selection" of lower coverage when the lower amount of that coverage is listed on the first page of the Application. The trial court concluded that because Mr. Lawson did not check one of the three options provided on the last page of the Application for rejecting uninsured motorist benefits or selecting a lower amount, the written requirement of the statute had not been met. We disagree.

In granting permission for this interlocutory appeal, the trial court correctly stated that there is no *binding* state authority on this issue. However, the Tennessee Supreme Court has held that "unpublished intermediate court opinions have persuasive force." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 n.2 (Tenn. 1991). This court held in *Peak v. Travelers Indemnity Co.* that the plaintiff had effectively selected a lower limit of uninsured motorist coverage under Tenn. Code Ann. § 56-7-1201(a), where he had signed an insurance policy containing a stated uninsured motorist limit of $60,000 but had not initialed one of three selection options provided for the purpose. No. M2001-03047-COA-R3-CV, 2002 WL 31890892, at *5 (Tenn. Ct. App. M.S., Dec. 31, 2002). In *Dunn*, a reported case with highly distinguishable facts, another panel of this court held that an insured party had not selected lower limits of uninsured motorist coverage by simply "negotiating a $1,000,000.00 deductible for all insured losses." 833 S.W.2d at 82. Key to this factual distinction is that in

*Dunn*, "the policy provisions did not expressly include uninsured motorist coverage for vehicles based in Tennessee." *Id.* at 80.

The facts in this case mirror those in *Peak* in many aspects but are distinguishable in a way that helps hone the issue for the question raised here. In *Peak*, the record reflected testimony showing that the insured "requested of [the insurance agent] $60,000 in uninsured/underinsured motorist coverage and [the agent] penned-in the $60,000 figure on the selection form, then forwarded the form to [the insured] who signed it. . . ." 2002 WL 31890892, at *5. In both *Peak* and the case at bar, the insured continued to be covered by the policy for several years, renewing it with the same uninsured motorist coverage as listed on the original. *See id.* However, in this case, the only evidence in the record of Mr. Lawson's intent when signing the Application is his signature, verified by the insurance agent but without any additional testimony as to the circumstances surrounding Mr. Lawson's signing. Therefore, the narrow question is whether the signature on the policy, without facts in evidence regarding the insured's intent on selection of lower uninsured motorist coverage, constitutes written selection of that lowered coverage under Tenn. Code Ann. § 56-7-1201(a)(2).

It is well settled in Tennessee that an insurance policy is a contract, subject to the principles of contract law. *See Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 156-57 (Tenn. Ct. App. 1993) (citing *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146 (Tenn. 1950), with approval in applying contract law to an insurance contract). When the insured has signed a contract, he or she is presumed to have knowledge of the contract's contents. *Giles*, 871 S.W.2d at 156 ("'[T]hat if, without being the victim of fraud [the insured] fails to read the contract or otherwise learn its contents, he signs the same at his peril and is estopped to deny his obligation, will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.'") (quoting *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950)) (multiple supporting citations omitted). Mr. Lawson signed the insurance contract application containing the $60,000 uninsured motorist limit. Mr. Kiser raises no specter of fraud that would provide an exception to the presumption that Mr. Lawson knew what he was signing. The requirement under Tenn. Code Ann. § 56-7-1201(a)(2) that uninsured motorist coverage lower than liability limits be selected in the contract was met by that coverage's clear listing on the front page and Mr. Lawson's signature on the last page.

## B. Burden of Proof

The second question raised on interlocutory appeal, as stated by the trial court, is "which party has the burden of going forward in light of the undisputed facts of this case."

The key undisputed facts in this case are that Mr. Lawson signed the insurance contract application and that the application contained a clearly stated uninsured motorist coverage limit of $60,000. Because Mr. Lawson is presumed to have knowledge of the application's contents, the insurance company has met its burden of proof under Tenn. Code Ann. § 56-7-1201(a)(2) by showing that Mr. Lawson voluntarily signed an insurance contract application that contained a written uninsured motorist coverage limit lower than the bodily injury liability coverage in the same contract. *See Giles*, 871 S.W.2d at 156. If Mr. Kiser had alleged that Consumers committed fraud in obtaining Mr. Lawson's signature, Mr. Kiser would then bear the burden of going forward to show that Mr. Lawson's signature was obtained unlawfully. *See, e.g., Beasley*, 229 S.W.2d at 147 (analyzing the insured party's proof to determine that the insured had signed the contract without reading it, "though there was no fraud, duress, or disability to prevent his reading it"). However, Mr. Kiser has made no such allegation of fraud, and Mr. Lawson has been silent on the matter. Consumers has met its burden of proof under the statute.

## V. CONCLUSION

We conclude that for a policy of vehicle insurance, the statutory requirement of Tenn. Code Ann. § 56-7-1201(a)(2) for a written rejection of uninsured/underinsured motorist benefits or selection of uninsured/underinsured motorist benefits lower than liability limits is met when the insured signs an application containing a lower selection but neglects to initial a block provided for that purpose. In addition, the insurer has met its burden of proof under the statute if, absent fraud, it can show that the insured voluntarily signed an insurance contract application that clearly stated an uninsured/underinsured motorist coverage amount lower than the bodily injury liability amount. We vacate the trial court's denial of Consumer's Motion for Partial Summary Judgment and remand for reconsideration in light of this holding. The costs on appeal are assessed against the Appellee, Randall D. Kiser.

_____
JOHN W. McCLARTY, JUDGE