IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
June 2, 2011 Session[1]

## RANDALL D. KISER v. IAN J. WOLFE ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Bradley County**
**No. V-05-869        Lawrence Howard Puckett, Judge**

---

**No. E2009-01529-SC-R11-CV - Filed August 24, 2011**

---

The plaintiff, an employee of the insured, was injured while driving the insured's tow truck. He filed suit against the defendant and later sought to invoke the insured's uninsured motorist policy in an amount equal to the liability coverage for bodily injury. The insurer filed a motion for partial summary judgment, seeking to limit uninsured motorist coverage to the amount listed on the first page of the policy rather than the amount otherwise fixed by statute. The trial court denied the motion, but the Court of Appeals reversed. We affirm the judgment of the Court of Appeals, holding that the insured was entitled to a partial summary judgment. When the insured signs an application indicating the selection of uninsured motorist coverage lower than the liability limits, but neglects to initial a provision designed to confirm the selection of coverage less than the standard provided by statute, the "in writing" requirement under Tennessee Code Annotated section 56-7-1201(a)(2) (2008) has been satisfied. The cause is remanded to the trial court for the entry of partial summary judgment and such other proceedings, as may be necessary.

**Tenn. R. App. P. 11; Judgment of the Court of Appeals Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, and WILLIAM C. KOCH, JR., JJ., joined. SHARON G. LEE, J., filed a separate opinion concurring in part and dissenting in part.

Christopher D. Markel, Chattanooga, Tennessee, for the appellant, Randall Kiser.

N. Mark Kinsman and J. Chad Hogue, Chattanooga, Tennessee, for the appellee, Consumers Insurance Company.

---

[1] Oral argument was heard in this case on June 2, 2011, in Nashville, Davidson County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

**OPINION**

On May 5, 2005, Randall D. Kiser (the "Plaintiff") was seriously injured while driving a tow truck for his employer, Ken Lawson, who conducted business as Lawson Towing Service ("Lawson"). A car driven by Ian J. Wolfe (the "Defendant") crossed over the center line of Frontage Road in Bradley County and struck the Plaintiff's vehicle. On November 1, 2005, the Plaintiff filed suit, alleging that the negligent acts of the Defendant were the sole and proximate cause of the collision and seeking $1,500,000 in damages. Because the Defendant, who conceded that the Plaintiff was without fault in the accident, tendered the policy limits of his liability insurance coverage, the Plaintiff joined Consumers Insurance Company ("Consumers"), Lawson's insurer, as an additional defendant pursuant to the uninsured motorist statutes. See generally Tenn. Code Ann. §§ 56-7-1201 to -1206 (2008).[2] While Consumers claimed uninsured motorist bodily injury limits of $60,000 and sought offsets against that sum for advanced medical payments and the amount tendered by the Defendant's insurer, the Plaintiff contended that he was entitled to coverage under the Consumers policy in the amount of $1,000,000, the extent of Lawson's liability insurance.

The Plaintiff's claim for higher coverage was based upon Tennessee Code Annotated 56-7-1201(a), which requires uninsured motorist coverage in the same amount as the bodily injury liability limits unless the amount is rejected in writing. He asserted that the application

---

[2] The statute states, in relevant part, as follows:

> For the purpose of uninsured motor vehicle coverage, "uninsured motor vehicle" means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury, death, or damage to property of an insured, and for which the sum of the limits of liability available to the insured under all valid and collectible insurance policies, bonds, and securities applicable to the bodily injury, death, or damage to property is less than the applicable limits of uninsured motorist coverage provided to the insured under the policy against which the claim is made . . . .

Tenn. Code Ann. § 56-7-1202(a)(1).

An additional statutory provision provides as follows:

> [I]f a party . . . alleged to be liable for the bodily injury . . . of the insured offers the limits of all liability insurance policies available . . . in settlement of the insured's claim, the insured . . . may accept the offer, execute a full release of the party . . . on whose behalf the offer is made and preserve the right to seek additional compensation from the insured's uninsured motorist insurance carrier upon agreement of the insured . . . to submit . . . to binding arbitration . . . all issues of tort liability and damages . . . .

Tenn. Code Ann. § 56-7-1206(f).

for insurance indicated that Lawson did not reject uninsured motorist coverage lower than the amount of the liability coverage, as required by the statute, and that Consumers was, therefore, liable for any amount not in excess of $1,000,000.

In response, Consumers acknowledged having provided liability insurance coverage for Lawson Towing Service in the amount of $1,000,000, but asserted that the first page of the three-page application demonstrated that Lawson, on September 10, 2002, elected to limit the uninsured motorist coverage for bodily injury to $60,000. Consumers filed a motion for partial summary judgment seeking a ruling that its exposure to the claim was limited to $60,000. In support, Consumers produced a copy of the application, offered proof by the insurance agent's deposition that Lawson signed the application, and also provided documentation that from the date the policy was issued until the time of the Plaintiff's injury, Lawson had renewed the policy on two occasions without requesting an increase in either the uninsured motorist coverage or the liability coverage, and also had paid premiums for thirty months based upon the lower uninsured motorist limits. The Plaintiff did not challenge the contents of the affidavit filed in support of Consumers' motion for summary judgment or otherwise question the authenticity of the three-page application.

The trial court denied the motion, observing as follows:

1. . . . The page with a signature notes an "effective date" of the policy of insurance of September 10, 2002, and contains a section for an insured-applicant to acknowledge that "uninsured bodily injury and property damage coverage have been explained to me. I have been offered the options of selecting UM limits equal to my liability limits, UM limits lower than my liability limits, or to reject UM bodily injury and/or UM property damage coverages entirely." Below this section, on the same page, appear several blanks, for the insured to initial acknowledgment of the aforementioned, and his selection of UM limits contained in the application, his rejection of all UM coverage, and/or rejection only of UM property damage coverage. It is undisputed that each blank in this section on the signature page was not initialed by the insured.

2. The record contains no testimony from Mr. Lawson as to his intent in these matters. Further, both parties have declined the option of obtaining testimony from Mr. Lawson as to his intent in these matters, and have agreed to proceed based upon the Court's interpretation of the application and facts in the record.

The trial court concluded that the application was inadequate to establish uninsured motorist

limits lower than the liability coverage extended under the policy and further commented as follows:

> If [Lawson] comes in and says that he didn't intend to have any more than what he had on the UM or some other way expresses that his signature was intended to be a rejection, then I think that proof needs to be in the record, but just on the instrument itself you're stuck with your paperwork, and it's not sufficient.

At the request of Consumers, the trial court granted an interlocutory appeal by permission. See Tenn. R. App. P. 9.

The Court of Appeals reversed and remanded, directing that Consumers' motion for partial summary judgment be granted and holding that the requirements for the "written selection of uninsured/underinsured motorist benefits lower than liability limits is met when the insured signs an application containing a lower selection but neglects to initial a block provided for that purpose." Kiser v. Wolfe, No. E2009-01529-COA-R9-CV, 2010 WL 2160780, at *1 (Tenn. Ct. App. May 28, 2010). The rationale for its ruling was that an insurer, in order to meet its burden of proof, must only demonstrate "that the insured voluntarily signed an insurance contract application that clearly stated an uninsured/underinsured . . . amount lower than the bodily injury liability amount." Id. at *7. In a petition to rehear, the Plaintiff asserted that the trial court had based its ruling upon only the third page of the attachment to Consumers' motion for summary judgment without reference to the other two pages, the first of which shows, in bold print, liability coverage of $1,000,000 and uninsured motorist coverage of $60,000. The Court of Appeals summarily denied the petition. This Court granted the Plaintiff's application for permission to appeal in order to clarify the nature of the writing necessary to comply with the statute.

**Standard of Review and Statutory Interpretation**

Initially, summary judgment may only be granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; Hannan v. Alltel Publ'g Co., 270 S.W.3d 1, 5 (Tenn. 2008); Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993). In this instance, the facts are not in dispute. The question this Court has chosen to address is whether Lawson's signature on an insurance application indicating lower coverage than the liability limits, but with an uncompleted section designed to confirm either acceptance of a lower amount or rejection altogether, is sufficient to fulfill the statutory requirement that the selection of lower uninsured motorist coverage be in written form. Statutory interpretation, of course, presents a question of law and our review is de novo with no presumption of correctness. Carter v. Quality Outdoor Prods., Inc., 303 S.W.3d 265, 267 (Tenn. 2010) (citing Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826

(Tenn. 2003)).

## Analysis

The applicable statute provides as follows:

(a) <u>Every automobile liability insurance policy delivered, issued for delivery or renewed in this state</u>, covering liability arising out of the ownership, maintenance, or use of any motor vehicle designed for use primarily on public roads and registered or principally garaged in this state, <u>shall include uninsured motorist coverage</u>, subject to provisions filed with and approved by the commissioner, for the protection of persons insured under the policy who are legally entitled to recover compensatory damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting from injury, sickness or disease.

(1) <u>The limits of the uninsured motorist coverage shall be equal to the bodily injury liability limits stated in the policy</u>.

Tenn. Code Ann. § 56-7-1201(a)–(a)(1) (emphasis added).

There is a provision, however, that permits a policy holder to either decline uninsured motorist coverage or select lower limits:

> (2) <u>However, any named insured may reject in writing the uninsured motorist coverage completely or select lower limits of the coverage</u> but not less than the minimum coverage limits in § 55-12-107. <u>Any document signed by the named insured or legal representative that initially rejects the coverage or selects lower limits shall be binding upon every insured to whom the policy applies</u>, and <u>shall be conclusively presumed to become a part of the policy</u> or contract when issued or delivered, regardless of whether physically attached to the policy or contract. <u>Unless the named insured subsequently requests the coverage in writing, the rejected coverage need not be included in or supplemental to any continuation, renewal, reinstatement, or replacement of the policy</u>, or the transfer of vehicles insured under the policy, where the named insured had rejected the coverage in connection with a policy previously issued by the same insurer; provided, that whenever a new application is submitted in connection with any renewal, reinstatement or replacement transaction, this section shall apply in the same manner as when a new policy is being issued.

Tenn. Code Ann. § 56-7-1201(a)(2) (emphasis added).[3]

The application for insurance, titled "Towing – Commercial Application" is Exhibit 1 to the motion for summary judgment. The first page lists the date as September 10, 2002, and the amount of uninsured motorist coverage as $60,000. Lawson and Jeff Holden, an agent for Insurance and Investment Solutions, Inc., signed the document on the third page of three unnumbered pages. The following text appears immediately before Lawson's signature:

> I UNDERSTAND AND ACKNOWLEDGE THAT UNINSURED MOTORISTS (UM) BODILY INJURY AND PROPERTY DAMAGE COVERAGES HAVE BEEN EXPLAINED TO ME. I HAVE BEEN OFFERED THE OPTIONS OF SELECTING UM LIMITS EQUAL TO MY LIABILITY LIMITS, UM LIMITS LOWER THAN MY LIABILITY LIMITS, OR TO REJECT UM BODILY INJURY AND/OR UM PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY.
>
> 1. I SELECT UNINSURED MOTORISTS BODILY INJURY LIMIT(S) INDICATED IN THIS APPLICATION. _____ (INITIALS)
> 2. I REJECT UNINSURED MOTORISTS BODILY INJURY AND PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY. _____ (INITIALS)
> 3. I REJECT ONLY UNINSURED MOTORISTS PROPERTY DAMAGE COVERAGE IN ITS ENTIRETY. _____ (INITIALS)

Although Lawson signed just below the only page of the application containing these three options, he did not initial any of them. For that reason, the Plaintiff first asserts that the trial court considered only the third page of the application and that our review should be similarly limited. He insists that by "application of the four corners doctrine to the unnumbered one page document that bore the signature of the insured," the uninsured

---

[3] When interpreting a statute, standard guidelines apply. We "must first ascertain and then give full effect to the General Assembly's intent and purpose" in drafting those sections. Waldschmidt v. Reassure Am. Life Ins. Co., 271 S.W.3d 173, 176 (Tenn. 2008). Our chief concern is to carry out the legislature's intent without unduly broadening or restricting the statute. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002) (quoting Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995)). When the statutory language is clear and unambiguous, we simply "apply its plain meaning." Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004). It is only when a statute is ambiguous that we refer to "the broader statutory scheme, the history of the legislation, or other sources" to ascertain its meaning. Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008).

motorist coverage should, by virtue of the statutory language, be equal to the $1,000,000 liability coverage rather than the $60,000 limit indicated on the first page of the application. See Int'l Flight Ctr. v. City of Murfreesboro, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000) (citing Koella v. McHargue, 976 S.W.2d 658, 661 (Tenn. Ct. App. 1998)) (holding that "[w]hen the language of a contract is plain and unambiguous, the court must determine the parties' intention from the four corners of [the] contract, interpreting and enforcing it as written"). He further submits that it is of particular significance that the trial court did not find that the page signed by Lawson "was presented . . . as a part of three consecutive pages, or that the three pages . . . presented . . . as the application bore any relationship one to the other" and argues that the Court of Appeals erred by considering all three pages as the application.

In our view, the record clearly demonstrates that the application presented in the trial court consisted of the three pages in the record.[4] At no time during the proceedings in the trial court did the Plaintiff specifically maintain that the application consisted of only the page bearing the uninitialed blanks and Lawson's signature or otherwise question the authenticity of the first two pages.[5] Under circumstances such as these, a party is simply not permitted to present issues on appeal not presented in the trial court. See Powell v. Cmty. Health Sys., Inc., 312 S.W.3d 496, 511 (Tenn. 2010). Moreover, the Plaintiff, during argument on the motion, urged the trial court to rule, without further affidavits or testimony, "based on the facts we now have." In our view, these facts include the entire three-page application. For these reasons, the Plaintiff's argument that the Court should review only the

---

[4] A party who seeks to

> oppos[e] the motion for summary judgment must . . . serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion . . . only, or (iii) demonstrating that the fact is disputed. . . .
>
> . . . Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

Tenn. R. Civ. P. 56.03. In this case, the record of the pleadings in the trial court do not include the Plaintiff's response to the Defendant's motion for summary judgment. A copy of a response, although unstamped by the clerk of the trial court, does appear in the application for the "Rule 9 Interlocutory Appeal" filed by the Defendant. This copy includes, as Exhibit A, the same three-page application filed by the employer.

[5] During argument in the trial court, the Plaintiff's counsel did, however, ask the trial judge to "note that of the three pages which were submitted as the application, there [are] no page numbers," but that the last page was the only one with a signature.

third page of the application appended to the summary judgment motion is altogether lacking merit.

Now, having addressed the preliminary issue, this Court must ascertain whether Lawson's signature on the insurance application met the "in writing" requirement of the statute. See Hermitage Health & Life Ins. Co. v. Cagle, 420 S.W.2d 591, 594 (Tenn. Ct. App. 1967) (finding that statutes that apply to an insurance policy not only become a part of the contract, but also "supersede anything in the policy repugnant to the provisions of the statute"); cf. Fleming v. Yi, 982 S.W.2d 868, 870 (Tenn. Ct. App. 1998) (noting that the written rejection "must be made a part of the policy" in order to reduce or reject totally uninsured motorist coverage). When construing an insurance contract, "the paramount rule . . . is to ascertain the intent of the parties. . . . [which] is to be derived from the four corners of the policy giving effect to all parts." Blue Diamond Coal Co. v. Holland-Am. Ins. Co., 671 S.W.2d 829, 833 (Tenn. 1984) (citations omitted); see also Scheele v. Hartford Underwriters Ins. Co., 218 S.W.3d 636, 642 (Tenn. 2007). "An elementary precept of contract law" is that when the language is clear, courts must not look beyond the four corners of the instrument. Whitehaven Cmty. Baptist Church v. Holloway, 973 S.W.2d 592, 596 (Tenn. 1998). It is only when a provision is found to be ambiguous that its interpretation will be construed against the drafter of the contract. Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 612 (Tenn. 2006); Hanover Ins. Co. v. Haney, 425 S.W.2d 590, 592 (Tenn. 1968).

A brief recitation of the statutory purpose is in order. In Tata v. Nichols, 848 S.W.2d 649, 654 (Tenn. 1993), this Court observed that the uninsured motorist statute was designed "to provide, within fixed limits, some recompense to . . . persons who receive bodily injury or property damage through the conduct of an uninsured motorist who cannot respond in damages." Initially, the statute provided that the section requiring uninsured motorist coverage equal to the liability coverage "shall not be applicable where any insured named in the policy shall reject the coverage." Tenn. Code Ann. § 56-7-1201 (1980). In 1982, the statute was amended to require that the rejection of uninsured motorist coverage equal to the bodily injury liability limits and the selection of lower limits not less than the minimum permissible be in written form. Dunn v. Hackett, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992) (citing Act of Apr. 8, 1982, ch. 835, 1982 Tenn. Pub. Acts § 1, at 472-74). In Dunn, the Court of Appeals held that the amended statute clearly and unequivocally required that "every automobile liability policy issued for delivery in this state shall include uninsured motorist coverage with limits equal to the bodily injury liability limits, unless the coverage is rejected by the named insured." Id.

In the case before us, the Court of Appeals, mindful that there are no published opinions on the nature of the writing required to either reject the uninsured motorist coverage in an amount equal to the liability limits for bodily injury or select a lower limit, properly

-8-

acknowledged the principle that an unpublished opinion of our intermediate courts often has "persuasive force" on the rulings of this Court. Kiser, 2010 WL 2160780, at *5; see, e.g., Allstate Ins. Co. v. Watts, 811 S.W.2d 883, 886 n.2 (Tenn. 1991). The facts in this instance are indeed similar to those in Peak v. Travelers Indemnity Co., No. M2001-03047-COA-R3-CV, 2002 WL 31890892 (Tenn. Ct. App. Dec. 31, 2002). Peak signed an application providing for $300,000 in liability coverage. Id. at *1. The policy declarations, however, listed uninsured motorist coverage as only $60,000, id., and the policy included a provision which, in pertinent part, provided as follows:

> NOTE: You may not choose an Uninsured Motorists Bodily Injury and/or Property Damage limit that is greater than your Liability limits. If your policy has a single Liability limit, you may choose only a single limit Uninsured Motorists Coverage option. If you have split Liability limits, you may choose only a split limit Uninsured Motorists Coverage option.
>
> Complete the following only if you want to reject all or part of your Uninsured Motorists Coverage.

Id. at *2. The subsequent paragraphs included an option to reject uninsured motorist coverage entirely, an option to select uninsured motorist coverage in various amounts for bodily injury only, and an option for uninsured motorist coverage on both bodily injury and property damage, also having a selection of limits. Id. Peak did not mark any of these options. Id. at *5. The following language appeared by his signature:

> I understand and agree that selection of one of the above options applies to my present auto insurance policy and future renewals or replacements of this policy. If I decide to select another option at some future time, I must let the Company or my agent know in writing.

Id. at *2. Peak renewed the policy for approximately three years without making any changes. See id. at *5. When he was seriously injured in a head-on collision with another vehicle, he sought to invoke uninsured motorist limits to the same extent of his liability coverage despite the policy provision limiting such coverage to $60,000. Id. at *1. The Court of Appeals concluded that the agent's "penned-in . . . $60,000 figure on the selection form," which was subsequently signed by the insured, controlled, and the failure to fill out an option had no effect. Id. at *5. The straightforward nature of the opinion in Peak is indeed persuasive.[6]

_____

[6] Unlike the dissent, we believe the analysis in Peak to be particularly instructive. While in this case
(continued...)

-9-

Our courts have consistently held that, absent fraud or misrepresentation, an insured who signs a policy of insurance is presumed to have knowledge of the contents of that policy. See Giles v. Allstate Ins. Co., 871 S.W.2d 154, 156-57 (Tenn. Ct. App. 1993) (quoting Beasely v. Metro. Life Ins. Co., 229 S.W.2d 146 (Tenn. 1950)); see also De Ford v. Nat'l Life & Accident Ins. Co., 185 S.W.2d 617, 621 (Tenn. 1945); Montgomery v. Reserve Life Ins. Co., 585 S.W.2d 620, 622 (Tenn. Ct. App. 1979); Hardin v. Combined Ins. Co. of Am., 528 S.W.2d 31, 37 (Tenn. Ct. App. 1975). Further, when an insured signs but fails to read the contract or otherwise ascertain its provisions, he or she "will be conclusively presumed to know the contents." Beasley, 229 S.W.2d at 148. An insured cannot claim that he is not bound by an insurance contract because he is ignorant of its provisions. Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 274 (Tenn. 2001).

Tennessee Code Annotated section 56-7-1201(a)(2) plainly requires only that the rejection of uninsured motorist coverage or the selection of lower limits be "in writing." Using the standard guidelines for statutory construction, our view is that the General Assembly intended nothing more and nothing less than the signature of the insured. The first page in the insurance application listed, clearly and in bold print, liability coverage in the amount of $1,000,000 with a premium of $3,695, and uninsured motorist coverage of $60,000 with a premium of $90. Because the document sets out the extent of coverage in an unambiguous manner,[7] there is no reason to construe the terms against Consumers as the drafter of the policy or consider parol evidence. See Watson, 195 S.W.3d at 612 (recognizing that courts are only permitted to use parol evidence to ascertain intent when a provision is ambiguous). Although Lawson neglected to initial any of the options for complete rejection of uninsured motorist coverage or for a selection of a lesser amount than liability coverage, the fact that he signed the application is not in dispute. Because Lawson is presumed to have had knowledge of the application's contents, Consumers has met its burden of proof by establishing that his signature appears on a document that demonstrates the selection of an uninsured motorist coverage less than that of the bodily injury liability limits. See Giles, 871 S.W.2d at 156.

---

[6](...continued)
there is not a specific statement by the insurance agent that Lawson asked for uninsured motorist coverage in the amount of $60,000, the agent witnessed Lawson sign an application clearly demonstrating uninsured motorist coverage in the amount of $60,000. This undisputed fact, coupled with Lawson's subsequent renewals of the policy terms, established that Lawson's "failure to fill out an option [] ha[d] no effect." Id. at *5.

[7] Although the dissent suggests that our holding "renders the 'in writing' requirement of [Tennessee Code Annotated section 56-7-1201] (a)(2) meaningless" and allows "[i]nsurance companies . . . to write policies with whatever UM limits they choose," these facts demonstrate otherwise.

**Conclusion**

Because there is no genuine issue of material fact that the policy provides for uninsured motorist limits of $60,000, the Defendant is entitled to partial summary judgment, and the cause is remanded to the trial court for that purpose. The judgment of the Court of Appeals, therefore, is affirmed. Costs are assessed against the Plaintiff, Randall D. Kiser, for which execution may issue, if necessary.

_____
GARY R. WADE, JUSTICE