# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 24, 2012 Session

## CREEKSIDE PARTNERS v. ALBERT NATHAN SCOTT ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 11737-I     Claudia Bonnyman, Chancellor**

**No. M2012-00623-COA-R3-CV - Filed January 10, 2013**

This is an action to recover damages for breach of a commercial lease from an individual whom the lessor claims guaranteed the obligations of the corporate tenant. The only issue on appeal is whether the individual defendant signed the lease solely in his capacity as the president of and on behalf of the corporate tenant, or whether the parties also intended to bind the individual defendant as a guarantor of the tenant's obligations. The trial court distinguished the facts of this case from those in the recent Tennessee Supreme Court decision in *84 Lumber Co. v. Smith*, 356 S.W.3d 380 (2011), and summarily dismissed the claims against the individual defendant. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Stephen A. Lund, Nashville, Tennessee, for the appellant, Creekside Partners.

Dan E. Huffstutter, Nashville, Tennessee, for the appellee, Albert Nathan Scott.

## OPINION

On September 28, 2007, Creekside Partners ("Creekside") entered into a commercial real estate agreement ("the Lease") with NTS Enterprises, Inc. ("NTS") for space in Creekside Plaza in Mount Juliet, Tennessee, where NTS planned to operate an Ace Hardware Store. The Lease was for a term of 124 months beginning April 1, 2008. The Lease, which was drafted by Creekside, identifies "Creekside Partners" as the "Landlord," and "NTS Enterprises, Inc., an entity owned by Albert Nathan Scott" as the "Tenant". The Lease bears only two signatures. Albert Nathan Scott, the president of NTS, signed on behalf of NTS as

its president; three days later, Nathaniel Greene, the chief manager of Creekside, signed the Lease on behalf of Creekside. Their signatures appear on page fourteen of the Lease as follows:

IN WITNESS WHEREOF, the undersigned Tenant, Landlord, and Guarantors have executed this Lease the day and year first above written.

ADDRESS:      LANDLORD:

C/O NAI Nashville      **Creekside Partners, LLC**
300 Broadway      By:      /s/
Nashville, TN 37201      Name:      Nathaniel Greene
     Its:      Chief Manager
     Date:      *October 1, 2007*

ADDRESS:      TENANT:
     **NTS Enterprises, Inc.**

*1213 Kathy's Trail*      By:      /s/
*Chatt., TN 37919*      Name:      A. Nathan Scott
     Its:      *President*
     Date:      *Sept. 28, 2007*

(Italics where information is handwritten) (Bold in original). No other signature lines appear in the Lease and there is no signature line separately or specifically designated for a guarantor to execute the lease. The remainder of page fourteen is blank. Page fifteen begins with Exhibit A to the Lease, which depicts a layout of the rental space.

Pursuant to the Lease, NTS was required to pay a base rent plus additional rent for common area maintenance, insurance, and real estate taxes. NTS was compliant with its lease obligations until 2010, when it failed to make full, timely rent payments in February, March, May, June, July and August. Consequently, Creekside terminated the Lease on August 23, 2010; however, NTS remained in the space until May 31, 2011, and continued to pay only partial rent.

Creekside filed this action against NTS and Mr. Scott on June 6, 2011, alleging, *inter alia*, that Mr. Scott was liable in his individual capacity as the guarantor of NTS's obligations pursuant to Article 32 of the Lease. That provision, which appears on page twelve of the Lease, provides as follows:

**Article 32.      Guarantors.**

In consideration of the letting of the Premises, the sum of TEN DOLLARS ($10.00) and other good and valuable consideration, receipt of which is hereby acknowledged, the undersigned Albert Nathan Scott, does hereby guarantee and become primarily liable as a co-Tenant(s) do(es) hereby promise and agree to pay unto the Landlord, its successors and assigns, such sum or sums of money as will be sufficient to make up such deficiency and fully satisfy the conditions of this Lease; however, said co-Tenant(s) called upon to perform under this Article shall, upon satisfaction of such default, at this option, be entitled to assume the position of the defaulting Tenant hereunder and shall thereafter enjoy all of the rights and privileges of the original Tenant hereunder.

In his Answer, Mr. Scott admitted that NTS breached the Lease by failing to make the rent payments, but denied personal liability. NTS did not file an answer or otherwise respond to the complaint and Creekside was subsequently awarded summary judgment on its claims against NTS.

Creekside filed for summary judgment as to Mr. Scott on August 12, 2011; Mr. Scott then filed a Rule 12.02(6) Motion to Dismiss on the grounds that he did not execute the Lease as a guarantor of NTS's obligations and thus was not personally liable. At a hearing on October 14, 2011, the trial court stated it would withhold judgment on the issue of Mr. Scott's individual liability until after the anticipated ruling by the Tennessee Supreme Court in the case of *84 Lumber Company v. Smith*, 356 S.W.3d 380 (Tenn. 2011), which was expected to address a similar issue.[1]

The *84 Lumber* decision was issued two months later, on December 12, 2011. Thereafter, NTS and Mr. Scott filed renewed motions addressing Mr. Scott's individual liability. After hearing arguments on the renewed motions on February 17, 2012, the trial court ruled in favor of Mr. Scott. The court found that Mr. Scott's signature – which was preceded by the corporation's name and followed by a designation of Mr. Scott's corporate capacity as its president – created a presumption that he acted solely as a corporate representative. The court also found that there was "no indication anywhere in the form of his signature . . . indicating that Mr. Scott intends to be signing as a guarantor or intends to be signing as an individual" to negate the presumption. Therefore, the trial court denied Creekside's motion for summary judgment and summarily dismissed all of Creekside's

---

[1]Creekside's Motion for Summary Judgment as to NTS was granted at this hearing; the amount of damages to be awarded was reserved for a later hearing by agreement of the parties.

claims as to Mr. Scott individually.[2] The parties subsequently agreed that Creekside's damages totaled $101,541.62 for the unpaid rent, and that Creekside was also entitled to $8,389.21 in attorney's fees pursuant to the Lease. Thus, the trial court entered an agreed order awarding Creekside a judgment against NTS only in the amount of $109,920.83.[3] This appeal by Creekside followed.

## ANALYSIS

Creekside asserts the trial court erred in failing to hold Mr. Scott individually liable as a guarantor for NTS's obligation as Tenant; it contends the error is the result of the trial court misconstruing the decision in *84 Lumber*.

As our Supreme Court recently stated in *84 Lumber*:

The Statute of Frauds requires that a contract to pay the debts of another must be signed by the guarantor. *See* Tenn.Code Ann. § 29-2-101(a)(2) (2000). In most cases, a representative who signs a contract is not personally bound to the contract. *See Dominion Bank of Middle Tenn. v. Crane*, 843 S.W.2d 14, 19 (Tenn. Ct. App. 1992); *Anderson v. Davis*, 34 Tenn.App. 116, 234 S.W.2d 368, 369-70 (1950). A representative who signs a contract may be personally bound, however, when the clear intent of the contract is to bind the representative. *See Lazarov v. Klyce*, 195 Tenn. 27, 255 S.W.2d 11, 14 (1953) (citing *Pope v. Landy*, 1 A.2d 589 (Del. Super. Ct.1938)) ("Whether or not a particular contract shows a clear intent that one of the parties was contracting as an individual or in a representative capacity, must be determined from the contract itself.").

When we interpret a contract, our role is to ascertain the intention of the parties. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract. *Kiser v. Wolfe*, 353 S.W.3d 741, 747

[2]Although Mr. Scott's motion was filed pursuant to Tennessee Rule of Civil Procedure 12, the trial court granted summary judgment pursuant to Rule 56 because matters outside the pleadings were considered by the trial court. *See* Tenn. R. Civ. P. 12.02(6) ("If, . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

[3]The trial court further found Creekside was entitled to a judgment for the difference between the rent paid by a new tenant and the amount NTS agreed to pay for the remainder of the Lease term, but that the claim was not yet ripe because Creekside had not yet found a new tenant.

(Tenn. 2011); *see Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78
S.W.3d 885, 889-90 (Tenn. 2002). The interpretation of a contract is a matter
of law, which we review de novo with no presumption of correctness. *Barnes
v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006).

*84 Lumber*, 356 S.W.3d at 382-83.

We begin our journey of ascertaining whether the *clear intent* of the Lease was to bind
both NTS and Mr. Scott by focusing on Mr. Scott's only signature on the Lease, which
appears on page fourteen of the Lease:

| ADDRESS: | TENANT: |
| | **NTS Enterprises, Inc.** |
| *1213 Kathy's Trail* | By: _____/s/_____ |
| *Chatt., TN 37919* | Name: A. Nathan Scott |
| | Its: *President* |
| | Date: *Sept. 28, 2007* |

Importantly, the word "By" appears just before Mr. Scott's only signature, and his
office with NTS - "Its: President" - is identified immediately after. As our Supreme Court
notes in *Cone Oil Co., Inc. v. Green*, 669 S.W.2d 662 (Tenn. 1983), this manner of executing
a contract gives rise to the presumption that the contract was signed only in a representative
capacity.

> It is possible for an officer of a corporation to avoid personal liability by
> signing his name and adding his title and the name of the corporation.
> However, such a signature does not produce the presumptive effect of a
> signature in which the name of the corporation appears first followed by the
> word, "by" or "per" and the name of the corporation. In the former case,
> additional evidence, such as test of the instrument or evidence of the joint
> intent of the parties, would be required to establish that only the corporation
> was to be bound. In the latter case, the intention of the parties is self evident
> from the form of the signature.

*Cone Oil Co., Inc.*, 669 S.W.2d at 664 (holding individual defendant liable where guaranty
was a completely separate document).[4]

---

[4]*Cone Oil Co.* is one of the cases relied upon in *Fleet One, LLC v. Cook*, No. M2001-03048-R3-CV,

(continued...)

Thus, because Mr. Scott's only signature appears immediately after the word "BY" and immediately before "Its: President," the intention of the parties is self evident from the form of the signature: Mr. Scott signed only in his representative capacity, not as a personal guarantor, and as a result, only the corporation, NTS, is obligated under the Lease. *See id.*

The foregoing notwithstanding, Creekside insists the decision in *84 Lumber* requires a different result. We therefore turn our attention to the facts in that case. The dispute in *84 Lumber* arose from an application for a credit account by Allstates Building Company, LLC; the credit application was signed a single time by the president of Allstates, R. Bryan Smith. *84 Lumber Co.*, 356 S.W.3d at 381. The application was approved and 84 Lumber extended a line of credit to Allstates. *Id.* After acquiring products on credit, Allstates failed to make the required payments on its account. *Id.* Thereafter, 84 Lumber filed suit seeking to recover its damages from Allstates as well as from Smith, whom it alleged had personally guaranteed the obligations of Allstates. *Id.* at 382.

The trial court held that the express language of the application Smith signed bound both Allstates as the credit applicant and Smith as an individual guarantor. *Id.* In a divided decision, the Court of Appeals reversed the trial court. *See 84 Lumber Co. v. Smith*, No. E2010-00292-COA-R3-CV, 2010 WL 4272739, at *5 (Tenn. Ct. App. Oct. 28, 2010) *rev'd* 356 S.W.3d 380 (Tenn. 2011). The Supreme Court reversed the decision by the Court of Appeals and reinstated the judgment of the trial court. *84 Lumber Co.*, 356 S.W.3d at 384.

In its opinion, the Supreme Court framed the issue as "whether Mr. Smith's signature on the credit application can bind him in both a representative capacity and as a guarantor to the contract or whether he can be bound as a guarantor only if he signed the application a second time in his individual capacity." *Id.* at 382. After identifying the controlling legal principles, the Supreme Court focused primarily on the following language of the application, which appeared immediately before Mr. Smith's signature:

> BY SIGNING BELOW I HEREBY CERTIFY THAT I AM THE OWNER, GENERAL PARTNER OR PRESIDENT OF THE ABOVE BUSINESS, AND I DO UNCONDITIONALLY AND IRREVOCABLY PERSONALLY GUARANTEE THIS CREDIT ACCOUNT AND PAYMENTS OF ANY AND ALL AMOUNTS DUE BY THE ABOVE BUSINESS, AND THAT I HAVE READ ALL OF THE TERMS AND CONDITIONS ON THE

---

[4](...continued)
2002 WL 1189559 (Tenn. Ct. App. June 5, 2002). Despite the negative treatment of the *Fleet One* case in the *84 Lumber* opinion, *see* 356 S.W.3d at 382-83, we do not interpret the *84 Lumber* opinion as overturning the above statement of law expressed in *Cone Oil*.

REVERSE SIDE OF THIS APPLICATION AND UNDERSTAND AND AGREE TO THE SAME, AND THAT ALL OF THE INFORMATION CONTAINED IN THIS APPLICATION IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

*Id.* at 381-82. On the same page and immediately below the guarantee provision, in the space provided for "Applicant," Mr. Smith signed, "R. Bryan Smith, President." *Id.* at 382.

The Supreme Court reasoned that the guarantee provision in the credit application served two purposes. First, it certified "that the individual signing the contract has the authority to sign the contract in a representative capacity for the company." *Id.* at 383. Second, by distinguishing between "'I,' the person signing the contract, and the 'above business'" the language "demonstrate[d] that the parties intended that the individual who signed the contract agreed to be personally responsible for amounts owed on the contract." *Id.* Thus, the Court concluded, "the clear and unambiguous language reflects that Mr. Smith both signed in a representative capacity and personally guaranteed the contract." *Id.*

Having closely examined the relevant language and the placement of that language in the credit application in *84 Lumber* and the relevant language and the placement of that language in the Lease in this case, we find significant differences. In *84 Lumber*, the guaranty provision is in all capital letters, set off from the rest of the text, and is immediately followed by Mr. Smith's signature on the same page of the credit application. *Id.* Here, the guaranty provision is in the same size font as all the other provisions in the lease and is separated from Mr. Scott's signature by two pages.

Furthermore, where Mr. Smith's personal obligation is exceedingly clear in the guarantee language in the *84 Lumber* credit application, Mr. Scott's alleged personal obligation under the Lease is in contradiction to other provisions in the Lease. Article 32, titled "Guarantors," purports to make Mr. Scott a "co-Tenant," yet there are numerous, unambiguous provisions of the Lease which specifically identify NTS as *the* tenant. Four examples of such are as follows: 1) On page one of the Lease, the "Tenant" is identified as "NTS Enterprises, Inc. dba Ace Hardware"; 2) Page two states that the Lease is "between Creekside Partners . . . (herein called '**Landlord**') and NTS Enterprises, Inc., an entity owned by Albert Nathan Scott, whose address is 1213 Kathy's Trail Chattanooga, Tennessee 37219 (herein called '**Tenant**')" (bold in original); 3) On page eleven, the Tenant is identified as "NTS Incorporated"; and 4) On page sixteen of the Lease ("EXHIBIT B"), the tenant is identified twice: as "NTS Enterprises, Inc. dba Ace Hardware," and as "NTS Enterprises, Inc." In addition to the express language of the Lease, Creekside identified NTS as *the tenant* in its Lease termination notice. The termination letter mailed to the attention of Mr. Scott on August 23, 2010, states:

This letter is to inform you that your lease dated September 28, 2007 for space at Creekside Plaza located at 4110 North Mt. Juliet Road, Mt. Juliet, Tennessee is hereby terminated for failure to pay rent as required in the Lease between Creekside Partners, LLC and NTS Enterprises, Inc dba Ace Hardware.

Finally, page eleven of the Lease provides that, "[n]otices to any guarantor shall be deemed sent when sent to the address shown on the signatory page hereof," yet no addresses for guarantors are listed. Indeed, of the nineteen pages and 1,267 lines of text that comprise the Lease, only once does Mr. Scott's name appear in relation to the words "guarantee" or "co-tenant" and that is on line 826.[5]

Creekside asserts that Article 31 of the Lease remedies the above problems and establishes that the parties expressed clear intent to bind Mr. Scott in his individual capacity. Article 31 provides:

### Article 31.   Construction of Terms.

The words "Landlord" and "Tenant" as used herein shall include all permitted individuals, corporations (and if a corporation, its officers, employees or agents), and any and all other permitted guarantors, co-Tenants, persons or entities, and their respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding either of them and the pronouns used herein shall include, when appropriate, either gender and both singular and plural.

We respectfully disagree with this argument. Again, throughout the Lease, the Tenant is repeatedly identified as NTS and only NTS. Given this fact, along with the fact that there is no place for Mr. Scott to sign the lease as a guarantor (although "Guarantors" are mentioned in the sentence immediately preceding the signature blocks), the only express reference to Mr. Scott as a "co-tenant" appears two pages before the signature page, and finally the fact that Mr. Scott signed the Lease in an explicitly representative capacity, it is illogical to conclude that the parties expressed "clear intent" to bind Mr. Scott personally. *See 84 Lumber*, 356 S.W.3d at 382 (citing *Lazarov*, 255 S.W.2d at 14).

For all of the reasons addressed in this opinion, we find the facts of this case distinguishable from *84 Lumber* and conclude that the Lease does not show a clear intent that

---

[5]Every line of the form lease is numbered in the left column.

Mr. Scott was contracting as an individual guarantor of NTS's obligations. *See id.* Therefore, we affirm the decision of the trial court.

Finally, because we have determined Mr. Scott is not personally liable as a guarantor, Creekside's request for attorney's fees is respectfully denied.

**IN CONCLUSION**

The judgment of the trial court is affirmed in all respects. Costs of appeal are assessed against the appellant, Creekside Partners.

_____
FRANK G. CLEMENT, JR., JUDGE